IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| THE CLOUD FOUNDATION, INC., a Colorado non-profit organization, and FRONT RANGE EQUINE RESCUE, INC., a Colorado non-profit organization, | CV-06-111-BLG-RFC-cso |
| Plaintiffs, | **FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |
| vs. | |
| DIRK KEMPTHORNE, in his official capacity as Secretary, United States Department of Interior, KATHLEEN CLARKE, in her official capacity as Director, Bureau of Land Management, SANDRA S. BROOKS, in her official capacity as Field Manager, BLM, Billings Field Office, LINDA COATES-MARKLE, in her official capacities as Research Coordinator, Wild Horse and Burro Program, Bureau of Land Management and Montana State Wild Horse and Burro Specialist, Bureau of Land Management, MIKE JOHANNS, in his official capacity as Secretary, United States Department of Agriculture, DALE BOSWORTH, in his official capacity as Chief, United States Forest Service, GAIL KIMBELL, in her official capacity as Forester, Region 1, United States Forest Service, | |
| Defendants. | |

-1-

Pending before the Court is Defendants Mike Johanns, in his official capacity as Secretary, United States Department of Agriculture; Dale Bosworth, in his official capacity as Chief, United States Forest Service ("USFS"); and Gail Kimbell, in her official capacity as Forester, Region 1, USFS's (hereafter "USFS Defendants") Motion to Dismiss.  See *Court's Doc. No. 15*.  By Order dated January 22, 2007, United States District Judge Richard F. Cebull referred this case to the undersigned for all pretrial proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) including submission of proposed findings and recommendations. See *Court's Doc. No. 57*.

Having considered the issues presented by the parties, together with their submissions in support of their respective arguments, the Court enters the following findings and recommendation.

I.   **BACKGROUND**[1]

The Pryor Mountain Wild Horse Range ("PMWHR") was created in 1968 to protect the unique population of wild horses of Spanish ancestry and to protect native wildlife, watershed, recreation, archaeological, and scenic values.  *Verified Compl.* at ¶¶ 26, 38; *USFS's Ans.* at ¶¶ 26; 38; *July 31, 2006, Decl. of Nancy T.*

---

[1] The procedural and factual background of this case are thoroughly detailed in the record.  This summary is intended only to provide a basic background on the relevant facts for the issues addressed herein.

*Curriden* at ¶ 4.  The PMWHR, which encompasses over 39,000 acres, is located in southeastern Carbon County, Montana, and northern Big Horn County, Wyoming.  *Verified Compl.* at ¶ 39; *USFS's Ans.* at ¶ 39.

In 1971, Congress enacted the Wild Free Roaming Horses and Burrows Act ("WFRHBA"), 16 U.S.C. § 1331 *et seq.*  *Verified Compl.* at ¶ 60; *Curriden Decl.* at ¶ 5.  The WFRHBA states the policy of Congress that "wild free-roaming horses and burros shall be protected from capture, branding, harassment, or death[.]"  See 16 U.S.C. § 1331.  The WFRHBA provides: "Nothing in this chapter shall be construed to authorize the Secretary to relocate wild free-roaming horses or burros to areas of the public lands where they do not presently exist."  16 U.S.C. § 1339.  The Secretary of the Interior and the Secretary of Agriculture are directed to appoint a joint advisory board, composed of knowledgeable persons who are not governmental employees, to advise them on matters relating to the management and protection of wild free-roaming horses and burros.  16 U.S.C. § 1337.

In 1971, a PMWHR Special Advisory Committee set forth recommendations regarding the PMWHR to the Secretary of the Interior.  These recommendations were made part of wildlife biologist Ron Hall's 1972 report titled "Wild Horse Biology and Alternatives for Management of the PMWHR."  *Curriden Decl.* at ¶ 8, Ex. 4, pg. 19.  Among other things, Hall's report discussed

-3-

the wild horses' range on USFS lands, including confirmation that
at the time of the passage of the WFRHBA, eight horses utilized a
portion of the Lost Water Canyon area.  Id. at ¶ 8, Ex. 4, pg.
13.

        In 1972 and 1973, an interagency study, between the USFS and
the Bureau of Land Management ("BLM"), issued a report titled
"Land Use Recommendations for the Pryor Mountains."  Id. at ¶ 7,
Ex. 3, pg. 2.  The study concluded that wild horses had been
using the Lost Water Canyon area of the Custer National Forest
and that such use should continue.  Id. at pg. 5, 13-14.  On May
23, 1974, in a joint decision titled "Pryor Mountain Complex,
Land Use Decisions", the BLM and USFS provided for wild horse use
in the Lost Water Canyon area (what is now referenced as
Management Area Q, in the Custer National Forest Plan.)  Id. at ¶
7, Ex. 1, pg. 6.  This Land Use Decision was preceded by
published notice and comment.  Id. at Ex. 1, pg. 5.

        In 1980 and 1984, decision documents were issued authorizing
the USFS to continue to manage the Custer National Forest to
provide for wild horses in the Lost Water Canyon area.  Id. at ¶
9, Ex. 5, pg. 18; ¶ 10, Ex. 6.  The 1984 document, titled "Wild
Horse Use on National Forest Lands in Pryors", was based on an
Environmental Assessment ("EA") and documented in a Decision
Notice and Finding of No Significant Impact dated June 6, 1984.
Id. at ¶ 10, Ex. 6, pg. 22.

On June 10, 1987, the Custer Forest Plan Record of Decision ("CFPRD") was signed. Id. at ¶ 11, Ex. 7. The CFPRD set forth management areas on the Custer National Forest and identified management direction for these areas. Management Area Q was allocated to the management of wild horses. Id. at ¶ 11, Ex. 7, pg. 7. Specifically, the management plan states that Management Area Q encompasses "that area from the east rim of the Lost Water Canyon stretching eastward to the Custer National Forest boundary and is part of the [PMWHR]." Id. The CFPRD also indicated that areas outside Management Area Q would be designated for purposes that did not include use by wild horses. Id. at ¶ 12. The CFPRD was subject to public notice and comment, along with a Draft and Final Environmental Impact Statement, and was appealable. Id. at ¶ 13, Ex 7, pg. 5. Federal Register notice of the FEIS was also provided on June 19, 1987. See Sept. 29, 2007, Decl. of Nancy T. Curriden (hereafter "Second Curriden Decl.") at ¶ 6. To date, there has been no public administrative appeal or challenge of these USFS decisions identifying the wild horse territory on USFS lands. Curriden Decl. at ¶ 14.

On April 7, 2006, the BLM issued its "[EA] for the [PMWHR] Population Control 2006." Verified Compl. at ¶ 48. In the EA, the BLM announced its intentions to administer an immunocontraceptive, Porcine Zona Pellucida ("PZP") in 2007, 2008, 2009, and 2010, to mares of the Pryor herd who are 11 years

and older.  Id.  The EA also stated that the BLM "planned to
'bait trap' and remove 24 bachelor stallions and place them up
for adoption using a 'sealed bid' process."  Id.  On June 29,
2006, the BLM issued a Record of Decision ("ROD") calling for the
administration of the PZP and the permanent removal and adoption
of 11 male horses and 11 yearlings.  Id. at ¶ 3.

        Plaintiffs, The Cloud Foundation, Inc., and Front Range
Equine Rescue, Inc. (hereafter referred to as "TCF") filed suit
on July 7, 2006, alleging three causes of action.  Only their
third count relates to the USFS Defendants.  See id. at ¶¶ 97-99.
TCF alleges that the USFS has refused to acknowledge the
historical use of the Custer National Forest lands by the Pryor
herd.  Id. at ¶¶ 1, 97.  The TCF asks the Court to declare
illegal and set aside the USFS's "failure to recognize and allow
the wild horses of the PMWHR to use lands that they have used at
the passage of the [WFRHBA] in 1971."  Id. at ¶ 4.

        They contend that the USFS's refusal to acknowledge this use
has limited the horses' range to that established pursuant to the
1968 designation and not allowed expansion to that required by
the WFRHBA.  Id. at ¶ 98.  TFC asserts that prior to the
establishment of the WFRHBA, and including the present time, wild
horses have roamed lands in the northwest and western part of the
Custer National Forest.  Id. at ¶ 34.  They argue that the WFRHBA
provides that these additional USFS lands should be "legally

                              -6-

considered part of the current [PMWHR] and available for the wild horses to use." Id. TCF contends that the USFS has told them in the past that "wild horses are not compatible with wilderness values and therefore it cannot legally open these areas to the horses." Id. at ¶ 36. They allege that they have been told to await revision of the USFS plans in 2007, to seek having the USFS legally allow the PMWHR herd to use the USFS lands without restriction. Id.

TCF alleges that the USFS's actions are "arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law, and without observance of procedure required by law, and are thereby subject to reversal under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* ("APA")" Id. at 99. TCF asks the Court to issue a declaratory judgment that the USFS's actions are arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law, and without observance of procedure required by law, and thus contrary to the APA. Id. at pgs. 27-28. They also request that they be awarded costs and expenses, including reasonable attorney, expert witness, and consultant fees; and any other relief the Court deems appropriate. Id. at pg. 28.

## II. <u>DISCUSSION</u>

### A. CONVERSION OF MOTION TO DISMISS INTO A MOTION FOR SUMMARY JUDGMENT

The USFS Defendants argue that TCF's Verified Complaint

-7-

should be dismissed for failure to state a claim upon which relief can be granted, under Fed. R. Civ. P. 12(b)(6). *Mot. to Dismiss the USFS as a Party Def.* (hereafter "*USFS's Mot. to Dismiss*") at 2. In support of their motion, the USFS Defendants attached documents outside the pleadings that the Court has considered and not excluded. Thus, the Court will convert the motion to dismiss into a motion for summary judgment.

TCF argues that the USFS Defendants' motion to dismiss should not be converted because the USFS Defendants are moving to dismiss the case on jurisdictional grounds pursuant to Fed. R. Civ. P. 12(b)(1). They contend that with 12(b)(1) motions, parties can submit materials outside the pleadings to aid the Court in resolving the issue of whether it has jurisdiction to decide the matter without converting the motion to a motion for summary judgment. <u>See</u> *Plf.s' Memo. of Points & Authorities in Opposition to Mot. to Dismiss & to Change Venue* (hereafter "*TCF's Brief*") at 4, n. 2.

The USFS Defendants have brought this motion pursuant to Rule 12(b)(6), not Rule 12(b)(1). <u>See</u> *USFS's Mot. to Dismiss* at 2. "Federal statutory time limitations on suits against the government are not jurisdictional in nature." <u>See</u> <u>Cedars-Sinai Med. Center v. Shalala</u>, 125 F.3d 765, 770 (9th Cir. 1997) (analyzing 28 U.S.C. § 2401(a)) (quoting <u>Washington v. Garret</u>, 10 F.3d 1421, 1437 (9th Cir. 1993) and citing <u>Irwin v. Dept. of</u>

-8-

<u>Veteran Affairs</u>, 498 U.S. 89, 96 (1990)).  The question before
the Court is whether TFC's claim against the USFS is barred by a
six-year statute of limitations, which is not a jurisdictional
question.  Accordingly, the USFS Defendants properly raised it in
a Rule 12(b)(6) motion to dismiss for failure to state a claim,
not a Rule 12(b)(1) motion to dismiss for lack of jurisdiction.
<u>See</u> <u>Supermail Cargo, Inc. v. U.S.</u>, 68 F.3d 1204, 1206 n. 2 (9th
Cir. 1995); <u>see also</u> <u>Marley v. U.S.</u>, 2006 WL 3469602 * 1 (W.D.
Wash. 2006).

The record reflects that TCF had notice of the extrinsic
materials, had an opportunity to respond thereto, itself
submitted matters outside the pleadings and invited consideration
of them.  <u>See</u> *TCF Memo In Opposition to Motion to Dismiss, Exs.
1-4.*  Accordingly, the Court will address the motion without
allowing the parties further notice and opportunity to conduct
discovery with respect to the motion.  <u>See</u> <u>Olsen v. Idaho State
Bd. Of Medicine</u>, 363 F.3d 916, 922 (9th Cir. 2004); <u>San Pedro
Hotel Co., Inc. v. City of Los Angeles</u>, 159 F.3d 470, 477 (9th
Cir. 1998), <u>citing with approval</u> <u>Grove v. Mead School Dist. No.
354</u>, 753 F.2d 1528, 1532 (9th Cir. 1985) (holding that a
"represented party who submits matters outside the pleadings to
the judge and invites consideration of them has notice that the
judge may use them to decide a motion originally noted as a
motion to dismiss, requiring its transformation to a motion for

summary judgment").

### B.   STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable trier of fact to return a verdict for the nonmoving party. <u>Id</u>.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." <u>Id</u>.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own

affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

### C.   PARTIES' ARGUMENTS

The USFS Defendants argue that a six-year statute of limitations bars TCF's claim.  *USFS's Brief in Support of Mot. to Dismiss* (hereafter "*USFS's Brief*) at 4.  They allege that the CFPRD, which sets forth its management direction regarding the wild horses on the PMWHR, has been in existence since 1987.  The USFS Defendants argue that TCF's attempt to modify that plan is thus barred by the six-year statute of limitations.  Id.

TCF responds with three arguments.  First, they contend that they may challenge the USFS's current and ongoing failure to include areas that the wild horses have historically used as areas that wild horses may currently occupy.  *TCF's Brief* at 3-7. Second, TCF asserts that they are challenging the substance of the USES's decision, thus the six-year statute of limitations does not apply.  Id. at  7-9.  Finally, TCF argues that they brought their claim against the USFS within six-years of when it accrued.  Id. at 9-10.

### D.  ANALYSIS

Title 28, U.S.C. § 2401(a), provides, in relevant part, as

follows: "Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  Section 2401(a) applies to actions for judicial review brought pursuant to the APA.  See Wind River Mining Corp. v. U.S., 946 F.2d 710, 712-13 (9th Cir. 1991).  The six-year statute of limitations begins to run when the right of action first accrues, which, under the APA, is generally the time of the final agency action.  5 U.S.C. § 704.

### 1.   Is USFS's Decision "Current" and "On-going"?

TCF first argues that the USFS's 1987 CFPRD is an action of continuing application and therefore a six-year statute of limitations is not applicable.  In support, TCF cites the case of Pacific Rivers Council v. Thomas, 30 F.3d 1050 (9th Cir. 1994), for the proposition that land use plans are "ongoing agency activity."  *TCF's Brief* at 3-5.

Pacific Rivers addressed an Endangered Species Act ("ESA") challenge to two forest plans adopted in 1990.  It concerned the ESA's Section 7 requirement that the USFS consult with the National Marine Fisheries Service ("NMFS") on the effect of agency action on chinook salmon once the NMFS listed chinook salmon as a threatened species.  The chinook salmon was listed as a threatened species after the USFS had adopted its forest plans. Observing that every individual project planned in both forests

was to be implemented according to the forest plans, the Court held that the USFS had to initiate formal consultation with NMFS on the forest plans because they affected each future project planned for the forests.  Id. at 1053.  The forest plans continued to apply to the new projects, and the Court thus concluded that because the forest plans had "an ongoing and long-lasting effect even after adoption," they represented "on-going agency action."  Id.

Pacific River, however, is not controlling here.  That decision squarely addressed future projects that are "planned" and "implemented" by the USFS pursuant to a forest plan, such as timber sales, range activities, grazing permits, and road building projects.  Id.  Unlike Pacific Rivers, this case involves no such future project(s) by the USFS.  The agency action regarding the wild horses' territory concluded with the creation of the 1987 CFPRD.  The ongoing activity of the USFS is simply management of its lands pursuant to the plan.  This continued operation is not a federal agency action.  There have been no recent USFS decisions regarding the wild horses' territory which the TCF may contest.  Rather, the USFS is maintaining the policy decisions set forth in the CFPRD regarding the wild horses.

The United States Supreme Court has found that agency action is completed when a plan is approved and there is no ongoing

federal action.   In <u>Norton v. Southern Utah Wilderness Alliance</u>
<u>("SUWA")</u>, 542 U.S. 55, 73 (2004), SUWA sought declaratory and
injunctive relief for the BLM's failure to act to protect Utah
public lands from environmental damage caused by off-road
vehicles.  <u>Id</u>. at 61.  SUWA raised several causes of action.
Pertinent to this case, SUWA challenged the BLM's failure to
fulfill its obligation under the National Environmental Policy
Act of 1969 to take a "hard look" at whether to supplement its
environmental impact statement ("EIS") in order to take increased
off-road vehicle use into account.  <u>Id</u>. at 61.  The Court held
that supplementation is required only if "there remains major
Federal actio[n] to occur."  <u>Id</u>. at 73 (quotation omitted).
Accordingly, because the BLM's approval of its land use plan was
the "action" that required the EIS, and since that plan was
already approved, the Court found that there was no ongoing
"major Federal actio[n]" that could require supplementation.  <u>Id</u>.

    Although SUWA was a jurisdictional challenge under NEPA, the
Court's ruling that there was no ongoing major federal action is
instructive here.  Plaintiffs do not allege that the USFS is
taking any new action.  The BLM, not the USFS, is conducting the
roundup of horses and administering the PZP.  The CFPRD was
approved in 1987, and notice of it was then filed in the Federal
Register.  <u>See</u> *Curriden Decl.* at ¶¶ 13-14; *Second Curriden Decl*.
at ¶ 6.  The USFS has not sought to modify any of its management

decisions regarding the wild horses in the CFPRD.  Thus, pursuant to SUWA, the Court must conclude that there is no ongoing federal action.

TCF points to a November 5, 2004, letter in support of its argument, but the letter does not identify ongoing federal action.  The letter merely explains to the BLM that expansion of the wild horses' territory outside of Management Area Q is not consistent with the CFPRD and that "to change current Forest Plan direction requires full public involvement and tribal consultation for a highly controversial Forest Plan Amendment."  See *TCF's Brief* at Ex. 1, pg. 2.  In fact, the letter actually provides support for the USFS, because it shows that the USFS has taken no new action but has only continued to manage its lands pursuant to the 1987 CFPRD.

TCF's reliance on Wilderness Society v. Norton, 434 F.3d 584 (D.C. Cir. 2006) is also misplaced.  See *TCF's Brief* at 5 (stating that the 1987 CFPRD is an ongoing, binding "substantive" decision and not a "policy decision).  Wilderness Society considered whether the National Park Service ("NPS") management policies required the NPS to produce wilderness management plans.  The Court found that the management policies were "a nonbinding, internal agency manual intended to guide and inform Park Service managers and staff" which do not "create enforceable regulations or modify existing legal rights."  Id. at 596-97.  This holding

-15-

is inapposite to whether a six-year statute of limitations is applicable to USFS forest plan decisions.

Accordingly, based on the foregoing, the Court finds that the 1987 CFPRD is not an "on-going agency action".  Therefore, a six-year statute of limitations applies and summary judgment is appropriate.

### 2.   TCF's Substantive Challenge

Second, TCF argues that they are making a substantive "as applied" challenge to the USFS's 1987 CFPRD, and thus the six-year statute of limitations does not apply.  <u>See</u> *TCF's Brief* at 7-9.  They contend that their reasons for challenging the USFS's actions are substantive in nature.  <u>Id</u>. at 8.  TCF asserts that the USFS has "failed to include as wild horse territories those lands on which wild horses existed at the passage of the WFHBA." <u>Id</u>.

In <u>Wind River</u>, *supra*, the Ninth Circuit held that a challenge to a procedural violation in the adoption of a regulation or other agency action, or a policy-based facial challenge must be brought within six years of the decision.  <u>Wind River</u>, 946 F.2d at 715.  The Court found, however, that if "a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority", the case may be brought within six years of the application of that agency decision to the challenger, as an "as applied" challenge.  <u>Id</u>.

-16-

The USFS Defendants properly note that TCF has not alleged in its complaint that the USFS's actions were *ultra vires*. The USFS Defendants argue that TCF has brought only a policy-based facial challenge and not a substantive "as applied" challenge and thus TCF needed to bring their challenge within six years of the enactment of the 1987 CFPRD.  The Court agrees.

In this case, TCF contends that the USFS has "refused to acknowledge the historical use of the Custer National Forest lands by the wild horses", and has "not allowed expansion of that range to that which is required by" the WFHBA.  *Verified Compl*. at ¶¶ 98-99.  In so arguing, TCF is asserting a policy challenge to the designation of the wild horses' territory on USFS land, not a challenge to the rule as applied to TCF.  TCF's challenge relates to the manner in which the wild horses' territory in the CFPRD was adopted.  Accordingly, it is not an "as applied" substantive challenge.  See generally Utu Utu Gwaitu Paiute Tribe of the Benton Paiute Reservation v. Dept. of the Interior, 766 F. Supp. 842, 845 (E.D. Cal. 1991) (finding that the Tribe's challenge did not relate to the manner in which 43 U.S.C. § 4.603(a) was adopted, but rather was a substantive "as applied" challenge because the Tribe challenged that § 4.603(a) was applied inconsistent with the EAJA and the case of Wong Yang Sung v. McGrath, 339 U.S. 33, *modified on other grounds*, 339 U.S. 908 (1950)).

The WFRHBA provides that: "Nothing in this chapter shall be construed to authorize the Secretary to relocate wild free-roaming horses or burros to areas of the public lands where they do not presently exist."  16 U.S.C. § 1339.  "Range" is defined as "the amount of land necessary to sustain an existing herd or herds of wild free-roaming horses and burros, which does not exceed their known territorial limits, and which is devoted principally but not necessarily exclusively to their welfare in keeping with the multiple-use management concept for the public lands[.]"  16 U.S.C. § 1332(c).

Regulations implemented by the Department of Agriculture provide that "[t]he Chief, Forest Service, shall protect, manage, and control wild free-roaming horses and burros on lands of the National Forest System[.]"  See 36 C.F.R. § 222.20(a).  The territory for wild horses on National Forest System lands is to be "identified by the Chief, Forest Service, as lands which were territorial habitat of wild free-roaming horses and/or burros at the time of the passage of the Act."[2]  See 36 C.F.R. § 222.20(b)(15); see also 36 C.F.R. § 222.21(a)(3) (holding that the Chief of the Forest Service, shall "[e]stablish wild horse and burro territories in accordance with the Act and continue recognition of such territories where it is determined that horses and/or burros will be recognized as part of the natural

---

[2] The "Act" means the WFRHBA.  See 36 C.F.R. § 222.20(b)(1).

-18-

system, and designate areas within these territories as a
specific wild horse and burro range in those situations where he
determines such designation as especially fitting to meet the
purposes of the Act"). The "wild-horse and burro range" is "an
area of National Forest System specifically so designated by the
Chief, Forest Service, from wild horse and burro territory, for
the purpose of sustaining an existing herd or herds of wild free-
roaming horses and burros, provided the range does not exceed
known territorial limits and is devoted principally, but not
necessarily exclusively, to the welfare of the wild horses and
burros, in keeping with the multiple-use management concept for
the National Forest System." 36 C.F.R. § 222.21(b)(14).

It is clear from the above statutes and regulations that the
USFS had authority to identify and designate the wild horses'
territory under the WFHBA. Here, the USFS merely exercised its
authority to identify, define, and designate areas for the wild
horses. After numerous studies and reports, the USFS identified
Management Area Q as the appropriate territory for the wild
horses. TCF does not contend that the USFS had no authority to
designate the territory, they simply disagree with the
designation that was made. They claim that the limitation of the
wild horses' territory by the USFS was "arbitrary and capricious"
and a violation of the WFHBA. Clearly, TCF is alleging that the
USFS made some errors when creating the CFPRD in 1987. If,

however, TCF wanted to contest the designation of territory for the wild horses, such challenge should have been made by 1993, or within six years of the issuance of the CFPRD in 1987.

TCF's complaint was filed over nineteen years after the CFPRD was signed. It has not recently been applied to TCF. As the Ninth Circuit noted in <u>Wind River</u>, for this Court to find that the statute of limitations did not apply in this instance the Court "would essentially nullify the statute of limitations by permitting renewed challenges" long after the CFPRD was entered. 946 F.2d at 714. This Court must remain sensitive to the USFS's interest in the finality of its policy decisions. <u>Id</u>.

Accordingly, based on the foregoing, the Court finds that TCF's policy-based facial challenge is barred by a six-year statute of limitations. Thus, summary judgment is appropriate.

### 3. Was TCF's Claim Brought Within Six Years of When It Accrued?

Finally, TCF argues that their cause of action against the USFS Defendants did not accrue until 2005 or 2006, and thus their complaint is timely. *TCF's Brief* at 9-10. TCF contends that they were not aware of the USFS's refusal to "consider expanding the PMWHR to include the areas that wild horses had historically used" until they were provided with a copy of Nancy Curriden's November 5, 2004, letter in 2005. They further allege that it was not until 2006 that Ginger Katherns, Volunteer Executive Director of TCF, first became aware of the USFS's position

-20-

through the BLM's EA and "its disastrous effects on this herd."
Id.

"Under federal law a cause of action accrues when the
plaintiff is aware of the wrong and can successfully bring a
cause of action."  Acri v. Intl. Ass'n of Machinists, 781 F.2d
1393, 1396 (9th Cir. 1986), cert. denied, 479 U.S. 816 (1986).
TCF alleges that it did not have knowledge of the USFS's decision
until 2005.  Actual knowledge of governmental action, however, is
not required for the statutory period to begin.  See Shiny Rock
Mining Corp. v. U.S., 906 F.2d 1362, 1364 (9th Cir. 1990).  The
Court in Shiny Rock found that "'[p]ublication in the Federal
Register is legally sufficient notice to all interested or
affected persons regardless of actual knowledge or hardship
resulting from ignorance.'" Id. (quoting Friends of Sierra R.R.,
Inc. v. ICC, 881 F.2d 663, 667-68 (9th Cir. 1989)).  Here, the
USFS gave notice of the Forest Plan Final Environmental Impact
Statement in the Federal Register.  See 52 FR 23353-01, 1987 WL
136485; see also Second Curriden Decl. at ¶ 6.

As to injury, the Ninth Circuit has taken a very broad view.
In Shiny Rock, the Court found that the only injury required for
the statutory period to begin was incurred by all people in 1987,
when the CFPRD was issued.  906 F.2d at 1365-66.  The affidavits
produced by TCF indicate that it was apparent to interested
citizens even before 1987 that the territories designated by the

-21-

USFS did not include past rangeland of the wild horses.  *See TCF's Brief* at Exs. 2 & 3.

Based on the foregoing, once notice of the CFPRD was given by publication in the Federal Register, the six-year limitations period was triggered, "for at that time any interested party acquired a 'right to file a civil action in the court against the United States.'" <u>Shiny Rock</u>, 906 F.2d at 1366 (quoting <u>Crown Coat Front Co. V. U.S.</u>, 386 U.S. 503, 511 (1967)).

### III. <u>CONCLUSION</u>

Based on the foregoing, the Court hereby enters the following:

**RECOMMENDATION**

Forest Service Defendants' Motion to Dismiss (*Court's Doc. No. 15*), converted herein to a Motion for Summary Judgment, should be **GRANTED.**

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed within ten (10) days after receipt hereof, or objection is waived.

DONE and DATED this 12th day of March, 2007.

<u>**/S/** Carolyn S. Ostby          </u>
Carolyn S. Ostby
United States Magistrate Judge